IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Tumeko Allen, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Shellpoint Partners, LLC, dba a/k/a | ) | **COMPLAINT WITH** |
| as Shellpoint Mortgage Services, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendant | ) | |

**PRELIMINARY STATEMENT**

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

**PARTIES**

1.   Plaintiff, Tumeko Allen, is a natural person who resides in Gwinnett County, Georgia.

2.   Defendant, Shellpoint Partners, LLC, dba and also known as Shellpoint Mortgage Services, Defendant is a limited liability corporation authorized to do business in Georgia. Defendant may be served with process via its registered agent,

1

Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Venue is proper in the Atlanta Division because the Defendant maintains a Registered Agent in Gwinnett which is in the Atlanta Division.

## FACTUAL ALLEGATIONS

7. The Plaintiff is allegedly obligated to pay a consumer debt arising out of a residential mortgage and is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

8. The Defendant is a mortgage servicer. In that capacity, it collects funds from consumers including principal, interest, escrow payments, and fees related to and arising out of mortgage obligations.

9. In 2019 the Defendant assumed servicing of a mortgage (the mortgage) granted by the Plaintiff on real estate located at 3720 Gin Way, Snellville, Georgia.

10. At the time it assumed servicing of the mortgage described herein, the mortgage loan was in default.

11. Defendant is therefore a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

12. On April 4th, 2011, the Plaintiff filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy code. The case was filed in the Northern District of Georgia and was assigned case number 11-60528-MHM.

13. In her schedule of secured claims, the Plaintiff listed First Horizon Home Loans care of First Tennessee Bank, Knoxville, Tennessee as the first mortgage holder on the debtor's residence referenced above.

14. The Plaintiff did not reaffirm the residential mortgage as permitted under 11 U.S.C. § 524.

15. No party objected to the discharge of Plaintiff's mortgage debt or any other claim in her bankruptcy.

16. On July 20, 2011, the United States Bankruptcy Court issued an order of discharge in favor of the Plaintiff under 11 U.S.C. § 727 that included the Plaintiff's mortgage debt. A copy of the discharge order and proof of services on the then mortgage holder is filed herewith as Exhibit 1.

17. The discharged mortgage is the same mortgage currently being serviced by the Defendant.

18. The Plaintiff recently came to learn that, despite the fact the debt was discharged in her bankruptcy case, the Defendant began reporting the account to Equifax, a national credit reporting agency, shortly after it assumed servicing rights.

19. In the report published by Equifax on May 10th, 2021, it can be seen that the Defendant reported the account to Equifax as recently as March 31, 2021. At that time it reported that the Plaintiff owed a balance of $233,782.00 and that her scheduled payment was $1,541 per month. Critically, nowhere in the tradeline did the Defendant disclose that the Plaintiff personal liability was discharged in her bankruptcy almost 10 years earlier.

20. A reproduction of the relevant portion of the tradeline appears below:

# 3. Mortgage Accounts

Mortgage accounts are real estate loans that require payment on a monthly basis until the loan is paid off.

## 3.1 SHELLPOINT MORTGAGE SERVICING

### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| **Account Number** | xxxxx 8901 | **Reported Balance** | $233,782 |
| **Account Status** | PAYS_AS_AGREED | **Debt-to-Credit Ratio** | 58% |
| **Available Credit** | | | |

### Account History

The tables below show up to 2 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

#### Balance

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | | | | | | $241,637 | | | $241,741 | | $241,388 | $241,009 |
| 2020 | $240,630 | $239,380 | | $239,011 | | $226,379 | | | | $238,869 | $238,547 | $238,225 |
| 2021 | | $237,578 | | | | | | | | | | |

### Account Details

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| | | | |
|---|---|---|---|
| **High Credit** | $405,000 | **Owner** | INDIVIDUAL |
| **Credit Limit** | | **Account Type** | MORTGAGE |
| **Terms Frequency** | MONTHLY | **Term Duration** | 48 |
| **Balance** | $233,782 | **Date Opened** | May 05, 2006 |
| **Amount Past Due** | | **Date Reported** | Mar 31, 2021 |
| **Actual Payment Amount** | | **Date of Last Payment** | Feb 01, 2021 |
| **Date of Last Activity** | | **Scheduled Payment Amount** | $1,541 |
| **Months Reviewed** | 25 | **Delinquency First Reported** | |
| **Activity Designator** | | **Creditor Classification** | UNKNOWN |
| **Deferred Payment Start Date** | | **Charge Off Amount** | |
| **Balloon Payment Date** | | **Balloon Payment Amount** | |
| **Loan Type** | Conventional Real Estate Mortgage | **Date Closed** | |
| **Date of First Delinquency** | | | |

#### Comments

Fixed rate

#### Contact

SHELLPOINT MORTGAGE SERVICING
55 BEATTIE PLACE STE 600
GREENVILLE, SC  29601
1-866-317-2347

21. The tradeline as reported by the Defendant is objectively false and materially misleading as the Plaintiff has no personal liability for any balance related to this mortgage and much less $233,782.00.

22. Credit reporting is governed by the 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act (FCRA).

23. Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Quale v. Unifund CCR Partners*, 682 F.Supp.2d 1274 (S.D. Ala. 2010).

24. A data furnisher, such as the Defendant, has an affirmative duty to update the information provided to a credit reporting agency to maintain accuracy and completeness per the FCRA, 15 U.S.C. § 1681s-2(a)(2)(B).

25. Upon information and belief, Defendant's agreements with Transunion and Experian require Defendant to report account information on a regular basis or schedule.

26. Moreover, per 15 U.S.C. § 1681s-2(a)(1)(A) a furnisher of credit information "…shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

27. It was incumbent upon the Defendant, if it chose to report its tradeline at all, to disclose that the debt had been discharged in bankruptcy and to make clear

to any recipients of the report that the Plaintiff did not have ongoing personal liability.

## INJURIES-IN-FACT

28. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

29. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

30. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

31. Defendant is subjecting Plaintiff to false means to collect the debt.

32. Defendants acts and omissions caused particularized harm to the Plaintiff in that they portray a false picture of both the Plaintiff's current debt structure, and debt to income ratio.

33. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

34. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

   a.) Being subjected to false debt collection practices;

   b.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

   c.) Anxiety and worry caused by concern that Plaintiff was being called up to pay an improper claim and that the Defendant would continue to engage in false credit reporting thus causing future and continuing harm to the Plaintiff's financial standing. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect her demeanor, her ability to engage in daily activities, resulted in sleeplessness, and adversely affected her relationships with others.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et. seq.

*Violations of 15 U.SC. § 1692e and its subparts*

35. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

36. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

37. The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

38. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

39. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive. The false information reported by the Defendant to Equifax was a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), and 1692e(10).

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## O.C.G.A. § 10-1-390, et seq.

40. Plaintiff incorporates by reference paragraphs 1 through 37 as though fully stated herein.

41. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

42. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

43. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

44. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

45. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

46. Defendant's conduct has implications for the consuming public in general.

47. Defendant's conduct negatively impacts the consumer marketplace.

48.  Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

49.  As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

50.  As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

51.  As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

52.  Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## TRIAL BY JURY

53.  Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.)  Plaintiff's actual damages;

b.)  Statutory damages pursuant to 15 U.S.C. § 1692k;

c.)  Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

d.) General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

e.) Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 30th day of June, 2021.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
matt@mattberry.com
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*